

# APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

| United States District Court | Eastern District o | **Case:5:10-cv-10441** |
|---|---|---|
| Name: Jason Owens Treadwell | Inmate Number: 338440 | **Judge: O'Meara, John Corbett** **MJ: Binder, Charles E.** |

**Place of Incarceration:**
Thumb Correctional Facility, 3225 John Conley Drive, Lapeer, Michigan 48446

| **Name of Petitioner** (Include the name under which you were incarcerated) | | **Name of Respondent** (authorized person having custody over you) |
|---|---|---|
| **JASON OWENS TREADWELL** | **v.** | **DAVID BERGH** |

The Attorney General of the State of Michigan

## AMENDED PETITION

1.    (a) Name and location of court which entered the judgment of conviction under attack:

Third Judicial Circuit of Michigan
Frank Murphy Hall of Justice
1441 St. Antoine
Detroit, Michigan 48226

(b) Case No.: 06-008315-01

2.    (a) Date of judgment of conviction: February 5, 2007

(b) Date of sentencing: February 23, 2007

3.    Length of sentence:    Life without Parole (twice)
285 months to 50 years (5 times)
2 years to 5 years
2 years to 2 years



4.    In this case, were you convicted on more than one count or of more than one crime?

Yes ☐        No ☐

5.    Nature of offense involved (all counts):

First-Degree Murder, contrary to Michigan Compiled Law (MCL) 750.316
Felony Murder, contrary to MCL 750.316
Assault with Intent to Rob while Armed, contrary to MCL 750.89
Carjacking, contrary to MCL 750.529a
Armed Robbery (2 counts), contrary to MCL 750.529
Assault with Intent to Murder, contrary to MCL 750.83
Felon in Possession of Firearm, contrary to MCL 750.224f
Felony firearm, contrary to Michigan Compiled Law 750.227b

6.      (a) What was your plea?:  Not guilty

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another
count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you pleaded not guilty, what kind of trial did you have?  Jury Trial

7.  Did you testify at trial?              Yes ☐         No

8.  Did you appeal from the judgment of conviction?  Yes ☐         No

9.      If you did appeal, answer the following:

(a) Name of court:  Michigan Court of Appeals

(b) Case No.:  277363

(c) Result:  Conviction affirmed but remanded for correction of Judgment of Sentence and
vacation of assault with intent to rob while armed (Issue III)

(d) Date of result:  July 15, 2009

(e) Citation to the case (if you know):  *People v Treadwell*, Unpublished Opinion per curiam of
the Michigan Court of Appeals, issued July 15, 2008, (Docket No. 277363).
(See Attachment C).

(f) Grounds raised:

I.      Appellant's convictions must be reversed and the charges dismissed, as
the prosecution failed to present legally sufficient evidence that he was a
principal or an aider and abettor in violation of his right to due process of
law.

II.     Appellant is entitled to a new trial where defense counsel provided
constitutionally ineffective assistance by failing to move to sever
unrelated offenses.

III.    The Constitutional protection against double jeopardy involving multiple
punishment for the same offense requires the Court to modify the
Judgment of Sentence to specify a single count for First-degree Murder

2

supported by two theories (Premeditated and Felony Murder), and to vacate the separate sentence for Assault with Intent to Rob Armed involving the same incident.

(g) Did you seek further review by a higher state court?     Yes ☐         No

If yes, answer the following:

(1) Name of court:  Michigan Supreme Court

(2) Case No.:  137126

(3) Result:  Leave denied (unpersuaded questions presented should be reviewed)

(4) Date of result:  January 27, 2009

(5) Citation to the case (if you know):  *People v Treadwell*, 483 Mich 881 (2009). (See Attachment D)

(6) Grounds raised:

I.    Appellant's convictions must be reversed and the charges dismissed, as the prosecution failed to present legally sufficient evidence that he was a principal or an aider and abettor in violation of his right to due process of law.

II.   Appellant is entitled to a new trial where defense counsel provided constitutionally ineffective assistance by failing to move to sever unrelated offenses.

New issue raised in Michigan Supreme Court:

Defendant- Appellant was denied his Sixth Amendment Right to effective assistance of counsel where counsel, with no strategic purpose, made numerous errors that were outcome determinative, thereby depriving Defendant-Appellant his right to a fair trial.

(h) Did you file a petition for certiorari in the United States Supreme Court?

Yes              No ☐

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions for relief from judgment pursuant to subchapter 6.500 of the Michigan Court Rules concerning this judgment of conviction in any state court?

Yes ☐         No

11.   If your answer to question 10 was "Yes," give the following information:

(a)    (1) Name of court:      Third Judicial Circuit of Michigan

3

Frank Murphy Hall of Justice
1441 St. Antoine
Detroit, Michigan 48226

(2) Case No.: 06-008315-01

(3) Date of result: October 12, 2010

(4) Nature of the proceeding:

Motion for Relief from Judgment
pursuant to Michigan Court Rules 6.500 *et. seq.*

(5) Grounds raised:

I. Defendant was denied a fair trial due to ineffective assistance of counsel because his attorney failed to investigate and prepare for trial.

II. Defendant was denied a fair trial because his attorney failed to call an exculpatory defense witness.

III. Defendant was denied a fair trial because his attorney failed to seek an expert witness to testify as to false identification and false confessions.

(6) Result: Motion denied

(7) Did you receive a hearing where evidence was given on your petition, application, or motion?
Yes               No ☐

(8) Date of result:

(b) If you filed any second petition, application, or motion, give the same information.

No other motions, applications, or petitions have been filed.

(c) If you filed any third petition, application, or motion, give the same information.

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?    Yes.  Grounds in 11 (a)(5) above have been appealed to the Michigan Supreme Court.

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

All grounds have been fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court.

12. For this petition, state every ground on which you claim that you are being held in violation of the

4

Constitution, laws, or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. State the facts supporting each ground. **CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE:

APPELLANT'S CONVICTIONS MUST BE REVERSED AND THE CHARGES DISMISSED, AS THE PROSECUTION FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE THAT HE WAS A PRINCIPAL OR AN AIDER AND ABETTOR IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT A for supporting facts

(b) If you did not exhaust you state remedies on Ground One, explain why:

Ground One was fully and fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court in Petitioner's Appeal of Right.

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) Post-Conviction Proceedings:

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

Yes      No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion or petition?          Yes                    No

(4)  Did you appeal from the denial of your motion or petition?  Yes                    No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes                No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)  Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

None.

GROUND TWO:

APPELLANT IS ENTITLED TO A NEW TRIAL WHERE
DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY
INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO
SEVER UNRELATED OFFENSES.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT A for supporting facts.

(b)  If you did not exhaust you state remedies on Ground Two, explain why:

Ground Two was fully and fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court in Petitioner's Appeal of Right.

(c)  Direct Appeal of Ground Two:

6

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) Post-Conviction Proceedings:

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

Yes          No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          Yes          No

(4) Did you appeal from the denial of your motion or petition?  Yes          No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes          No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground Two:

None.

GROUND THREE:

> DEFENDANT WAS DENIED A FAIR TRIAL DUE TO
> INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS
> ATTORNEY FAILED TO INVESTIGATE AND PREPARE FOR
> TRIAL.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT A for supporting facts.

(b) If you did not exhaust you state remedies on Ground Three, explain why:

Ground Three was fully and fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court from the denial of Petitioner's Post-conviction Motion for Relief from Judgment.

(c) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes            No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

Due to ineffective counsel, issue could only be raised in post-conviction motion

(d) Post-Conviction Proceedings:

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

Yes ☐            No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Relief from Judgment

Name and location of the court where the motion or petition was filed:

> Third Judicial Circuit of Michigan
> Frank Murphy Hall of Justice
> 1441 St. Antoine

8

Detroit, Michigan  48226

Docket or case number (if you know):  06-008315-01

Date of the court's decision:  October 12, 2010

Result (attach a copy of the court's opinion or order, if available):  (Attachment F)

(3)  Did you receive a hearing on your motion or petition?          Yes              No ☐

(4)  Did you appeal from the denial of your motion or petition?  Yes ☐              No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐                    No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the courts where the appeal was filed:

Issue appealed to both the Michigan Court of Appeals and the Michigan
Supreme Court.

Docket or case numbers (if you know):

Michigan Court of Appeals No.  306377
Michigan Supreme Court No.  145246

Date of the court's decisions:

Michigan Court of Appeals (lv den)     May 2, 2012
Michigan Supreme Court (lv den)        October 22, 2010

Result (attach a copy of the court's opinion or order, if available):

(Attachments G and H)

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not
raise this issue:

(e)  Other Remedies: Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

None.

GROUND FOUR:

DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS
ATTORNEY FAILED TO CALL AN EXCULPATORY DEFENSE

WITNESS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT A for supporting facts.

(b) If you did not exhaust you state remedies on Ground Four, explain why:

Ground Five was fully and fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court from the denial of Petitioner's Post-conviction Motion for Relief from Judgment.

(c) Direct Appeal of Ground Four:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes            No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

Due to ineffective counsel, issue could only be raised in post-conviction motion

(d) Post-Conviction Proceedings:

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

Yes ☐            No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Relief from Judgment

Name and location of the court where the motion or petition was filed:

Third Judicial Circuit of Michigan
Frank Murphy Hall of Justice
1441 St. Antoine
Detroit, Michigan 48226

Docket or case number (if you know): 06-008315-01

Date of the court's decision: October 12, 2010

Result (attach a copy of the court's opinion or order, if available): (Attachment F)

(3) Did you receive a hearing on your motion or petition?        Yes            No ☐

(4) Did you appeal from the denial of your motion or petition?  Yes ☐          No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐          No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the courts where the appeal was filed:

Issue appealed to both the Michigan Court of Appeals and the Michigan Supreme Court.

Docket or case numbers (if you know):

Michigan Court of Appeals No.  306377
Michigan Supreme Court No.  145246

Date of the court's decisions:

Michigan Court of Appeals (lv den)      May 2, 2012
Michigan Supreme Court (lv den)        October 22, 2010

Result (attach a copy of the court's opinion or order, if available):

(Attachments G and H)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

None.

GROUND FIVE:

DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO SEEK AN EXPERT WITNESS TO TESTIFY AS TO FALSE IDENTIFICATION AND FALSE CONFESSIONS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT A for supporting facts.

(b) If you did not exhaust you state remedies on Ground Five, explain why:

11

Ground Five was fully and fairly presented to both the Michigan Court of Appeals and the Michigan Supreme Court from the denial of Petitioner's Post-conviction Motion for Relief from Judgment.

(c)  Direct Appeal of Ground Five:

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes            No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

Due to ineffective counsel, issue could only be raised in post-conviction motion

(d)  Post-Conviction Proceedings:

(1)  Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

Yes ☐            No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Relief from Judgment

Name and location of the court where the motion or petition was filed:

> Third Judicial Circuit of Michigan
> Frank Murphy Hall of Justice
> 1441 St. Antoine
> Detroit, Michigan  48226

Docket or case number (if you know):  06-008315-01

Date of the court's decision:  October 12, 2010

Result (attach a copy of the court's opinion or order, if available):  (Attachment F)

(3)  Did you receive a hearing on your motion or petition?            Yes            No ☐

(4)  Did you appeal from the denial of your motion or petition?  Yes ☐            No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐            No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the courts where the appeal was filed:

12

Issue appealed to both the Michigan Court of Appeals and the Michigan Supreme Court.

Docket or case numbers (if you know):

Michigan Court of Appeals No. 306377
Michigan Supreme Court No. 145246

Date of the court's decisions:

Michigan Court of Appeals (lv den)    May 2, 2012
Michigan Supreme Court (lv den)    October 22, 2010

Result (attach a copy of the court's opinion or order, if available):

(Attachments G and H)

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)  Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five:

None.

13.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

(b) At arraignment and plea:

(c) At trial:          Antonio D. Tuddles (P64158), 615 Griswold, Detroit, MI 48226
                       (313) 965-1457

(d) At sentencing:     Antonio D. Tuddles (P64158), 615 Griswold, Detroit, MI 48226
                       (313) 965-1457

(e) On appeal:         Jonathan B.D. Simon (P35596), 717 Penobscot Building, 645 Griswold,
                       Detroit, MI 48226   (313) 964-0533

(f) In any post-conviction proceeding:   Lawrence J. Bunting (P27111), 3190 Rochester Rd.,
                                         Suite 100, Troy, MI 48084   (248) 689-4200

(g) On appeal from any ruling against you in a post-conviction proceeding: *In pro per*

14.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes          No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?      Yes                     No

## RELIEF REQUESTED

WHEREFORE, Petitioner moves this Honorable Court to grant any relief he may be entitled to in this proceeding.

Respectfully submitted,

Date: /2-4-12

Jason Owens Treadwell #338440
Petitioner, *in pro per*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that on the date notated below, I mailed this Petition for Writ of Habeas Corpus using a properly filled-out Expedited Legal Mail form by delivering the form and petition to a prison official for depositing in the United States Mail.

Respectfully submitted,

Date: 12-4-12

Jason Owens Treadwell

14

# INDEX OF ATTACHMENTS

### Federal Review

Grounds and Supporting Facts for Amended Habeas Petition.........................................................A

### Direct Appeal

Michigan Court of Appeals Brief on Appeal (Filed November 6, 2007)........................................B

Michigan Court of Appeals Opinion (Issued July 15, 2008) (Docket No. 277363).......................C

Michigan Supreme Court Order (Issued January 27, 2009) (Docket No. 137126)........................D

### Post-Conviction

Motion for Relief from Judgment (Filed April 2, 2010)................................................................E

Trial Court Order and Opinion Denying Relief (Issued October 12, 2010) ...................................F

Michigan Court of Appeals Order (Issued May 2, 2012) (Docket No. 306377) .............................G

Michigan Supreme Court Order (Issued October 22, 2012) (Docket No. 145246).........................H

## ATTACHMENT A
Grounds and Supporting Facts Raised in
Amended Petition for Writ of Habeas Corpus

ATTACHMENT A

Grounds and supporting facts for Petition for Writ of Habeas Corpus

GROUND ONE

APPELLANT'S CONVICTIONS MUST BE REVERSED AND
THE CHARGES DISMISSED, AS THE PROSECUTION
FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE
THAT HE WAS A PRINCIPAL OR AN AIDER AND ABETTOR
IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

A. THERE WAS INSUFFICIENT EVIDENCE OF PREMEDITATED MURDER

The Michigan Court of Appeals erred in concluding that there was sufficient evidence to support Petitioner's conviction for first-degree murder. No evidence was presented, even in a light viewed most favorable to the State, that Petitioner personally robbed and shot Phipps, nor was there evidence that he gave aid and assistance to the principal(s) with either intent to commit the charged offenses or knowledge that the principal(s) had that intent.

Other than a statement—that Petitioner denied making—and testimony that Petitioner was similar in size to one of the four assailants, there is absolutely no evidence presented in the case that he was even present when the shooting took place. Peculiarly, two victims, John Feazell and Marie Leinonen, were able to identify Petitioner while he was seated in court at counsel's table; yet, neither was able to identify Petitioner from an earlier police line-up.

The Michigan Court of Appeals should have concluded that there was legally insufficient evidence that Petitioner was the principal or that he aided and abetted the principal while either specifically intending that Phipps be killed, or knowing that the principals had that specific intent. The State failed to present sufficient evidence to permit a jury to find proof beyond a

reasonable doubt as to all of the essential elements of a charge of first-degree, premeditated murder—either as a principal or as an accessory.

See Attachment B, Michigan Court of Appeals brief, for more argument on the above.

B. THERE WAS INSUFFICIENT EVIODENCE OF FELONY MURDER, ASSAULT WITH INTENT TO ROB ARMED, ARMED ROBBERY, CARJACKING AND ASSAULT WITH INTENT TO MURDER.

Here to, the Michigan Court of Appeals erred in their suppositions concerning the sufficiency of evidence presented by the State to support these charges. The State's case on the felony murder charge carried the same insufficiency as the premeditated charge; besides a contested statement and testimony that Petitioner was similar in size, no evidence was presented that Petitioner was even involved in these crimes.

The State did not prove the required "intent" for the charges involving complainants Feazell and Leinonen. There was no evidence presented that Petitioner planned to rob Phipps and personally killed Phipps in the course of an assault with intent to rob him, and no evidence that Petitioner aided and abetted anyone else in committing either such offense. There was no evidence presented that Petitioner had any intent to carjack or rob Feazell, nor rob Leinonen or assault her with specific intent to murder her; no evidence that Petitioner was involved in the commission of any of the assaults or that he possessed or shared any assaultive intent of another.

The State Courts erred by not vacating the murder, carjacking, and assault convictions as there was no evidence presented that Petitioner even participated in these crimes.

See Attachment B, Michigan Court of Appeals brief, for more argument on the above.

Treadwell, Jason Owens #338440
Amended Habeas Petition

2

GROUND TWO

> APPELLANT IS ENTITLED TO A NEW TRIAL WHERE
> DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY
> INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO
> SEVER UNRELATED OFFENSES.

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Michigan Court of Appeals erred by not finding defense counsel ineffective for failing to move for severance. The charges Petitioner faced were random opportunistic crimes upon motorists on the west side of Detroit. Although the crimes were similar, they were entirely separate crimes. They were not connected together—to aid in accomplishing another; they were not a series of acts constituting parts of a single scheme or plan. The Michigan Court of Appeals concluded that because all the crimes happened within a certain span of time that severance was not appropriate.

Other than a statement—disputed by Petitioner—and testimony that Petitioner was similar in size to one of the four assailants, there was absolutely no evidence presented in the case that he was even present in the area of these crimes. Petitioner was never identified from any police line-up—although, oddly, two victims who could not identify him from a line-up were able to identify him while in court seated at counsel's table.

These crimes were unrelated and counsel should have moved to sever the unrelated offenses. The presence of all four incidents in one trial worked to violate Petitioner's right to a fair trial.

See Attachment B, Michigan Court of Appeals brief, for more argument on the above.

Treadwell, Jason Owens #338440
Amended Habeas Petition

3

GROUND THREE

> DEFENDANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO INVESTIGATE AND PREPARE FOR TRIAL.

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Michigan Court of Appeals erred by not finding Petitioner's defense counsel ineffective. The record shows that counsel failed to protect Petitioner's rights. By not recognizing the benefit of a witness for the defense, counsel was not acting in the best interests of his client. Grounds Four and Five below support the issue of defense counsel's ineffectiveness.

See Attachment E, Motion for Relief from Judgment, for more argument on the above.

GROUND FOUR

> DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO CALL AN EXCULPATORY DEFENSE WITNESS.

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Michigan Court of Appeals erred by not holding that Petitioner's defense counsel was constitutionally ineffective by failing to call a witness that a victim identified as the shooter. The testimony of this witness, Royce Ali, very well could have cleared Petitioner of these charges. When one factors in that Petitioner denied being in the area of these crimes, then testimony from a witness such as Royce Ali becomes more imperative. Defense counsel's failure in this area violated Petitioner's rights to representation and a fair trial. There could be no

Treadwell, Jason Owens #338440
Amended Habeas Petition

4

strategy in not calling such a witness to testify.

See Attachment E, Motion for Relief from Judgment, for more argument on the above.

GROUND FIVE

> DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS
> ATTORNEY FAILED TO SEEK AN EXPERT WITNESS TO
> TESTIFY AS TO FALSE IDENTIFICATION AND FALSE
> CONFESSIONS.

Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Michigan Court of Appeals should have held that Petitioner's defense counsel was ineffective when he failed to pursue an expert on false identification and false confessions. An expert would have shown the jury how and why false identifications and false confessions occur. Expert testimony was needed in this case and defense counsel's failure to seek an expert in these area violated Petitioner's rights to representation and a fair trial.

See Attachment E, Motion for Relief from Judgment, for more argument on the above.

Treadwell, Jason Owens #338440                    5
Amended Habeas Petition

## ATTACHMENT  B
Michigan Court of Appeals Brief on Appeal

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                     Docket No. 277363

JASON OWENS TREADWELL,

        Defendant-Appellant.

                                   /

Wayne Circuit Court No. 06-8315

---

## DEFENDANT-APPELLANT'S BRIEF ON APPEAL
### * * * ORAL ARGUMENT REQUESTED * * *

### CERTIFICATION OF SERVICE

JONATHAN B.D. SIMON (P35596)
Attorney for Appellant
717 Penobscot Building
645 Griswold
Detroit, Michigan 48226
(313) 964-0533

TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT I:

APPELLANT'S CONVICTIONS MUST BE REVERSED AND THE CHARGES
DISMISSED, AS THE PROSECUTION FAILED TO PRESENT LEGALLY
SUFFICIENT EVIDENCE THAT HE WAS A PRINCIPAL OR AN AIDER AND
ABETTOR IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW . . . . . . . . . 7

ARGUMENT II:

APPELLANT IS ENTITLED TO A NEW TRIAL WHERE DEFENSE COUNSEL
PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING
TO MOVE TO SEVER UNRELATED OFFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT III:

THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY
INVOLVING MULTIPLE PUNISHMENT FOR THE SAME OFFENSE
REQUIRES THE COURT TO MODIFY THE JUDGMENT OF SENTENCE TO
SPECIFY A SINGLE COUNT FOR FIRST DEGREE MURDER SUPPORTED BY
TWO THEORIES (PREMEDITATED AND FELONY MURDER), AND TO
VACATE THE SEPARATE SENTENCE FOR ASSAULT WITH INTENT TO
ROB ARMED INVOLVING THE SAME DECEDENT . . . . . . . . . . . . . . . . . . . . . . . . 14

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

INDEX OF AUTHORITIES

CASES                                                                                      Page

Jackson v Virginia, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979) . . . . . . . . . . . . . . . . . 7,8

People v Aldrich, 246 Mich App 101 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Anderson, 209 Mich App 527 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Barnes, 30 Mich App 586 (1971), remanded, 387 Mich 770 (1972) . . . . . . . . . . . . . 10

People v Barrera, 451 Mich 261 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Bigelow, 229 Mich App 218 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Brannon, 194 Mich App 121 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Cieslinski, 139 Mich App 675 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Daniels, 192 Mich App 658 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Daughenbaugh, 193 Mich App 506 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

People v Davenport, 230 Mich App 577 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Fields, 64 Mich App 166 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Flowers, 191 Mich App 169 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Greenberg, 176 Mich App 296 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Hampton, 407 Mich 354 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v Harding, 443 Mich 693 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Henry, 239 Mich App 140 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v Jolly, 442 Mich 458 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Kelly, 231 Mich App 627 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v LaVearn, 448 Mich 207 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v McGuff, 461 Mich 881 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Minor, 213 Mich App 682 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Patterson, 428 Mich 502 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v Phillips, 37 Mich App 242 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Plummer, 229 Mich App 293 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v Tanner, 255 Mich App 369 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

People v Taylor, 422 Mich 554 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Tobey, 401 Mich 141 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v Turner, 213 Mich App 558 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v White, 212 Mich App 298 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Wilbert, 105 Mich App 631 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Wilder, 411 Mich 328 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Wolfe, 440 Mich 508 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v Wybrecht, 222 Mich App 160 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Roberts v People, 19 Mich 401 (1870) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984) . . . . . . . . . . . . . 11

OTHER AUTHORITIES

Const 1963, art 1, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Const 1963, Art. 1, § 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MCL 750.83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.224f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.227b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.529 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCL 750.529a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MCR 6.120(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

MCR 6.419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

US Const, Am V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,14

US Const, Am XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,15

US Const., Am VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATEMENT OF APPELLATE JURISDICTION

Defendant-Appellant was convicted in the Wayne Circuit Court by jury trial, and a Judgment of Sentence was entered on March 30, 2007. A Claim of Appeal was filed on April 11, 2007 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel received February 18, 2007, as authorized by MCR 6.425(F)(3). This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, sec 20, pursuant to MCL 600.308(1), MCL 770.3, MCR 7.203(A), MCR 7.204(A)(2).

## STATEMENT OF QUESTIONS PRESENTED

### I

MUST APPELLANT'S CONVICTIONS BE REVERSED AND THE CHARGES DISMISSED, AS THE PROSECUTION FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE THAT HE WAS A PRINCIPAL OR AN AIDER AND ABETTOR IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

> Defendant-Appellant answers this question "Yes".
> Plaintiff-Appellee would answer this question "No".
> The court below would answer this question "No".

### II

IS APPELLANT ENTITLED TO A NEW TRIAL WHERE DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO SEVER UNRELATED OFFENSES.

> Defendant-Appellant answers this question "Yes".
> Plaintiff-Appellee would answer this question "No".
> The court below would answer this question "No".

### III

WHETHER THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY INVOLVING MULTIPLE PUNISHMENT FOR THE SAME OFFENSE REQUIRES THE COURT TO MODIFY THE JUDGMENT OF SENTENCE TO SPECIFY A SINGLE COUNT FOR FIRST DEGREE MURDER SUPPORTED BY TWO THEORIES (PREMEDITATED AND FELONY MURDER), AND TO VACATE THE SEPARATE SENTENCE FOR ASSAULT WITH INTENT TO ROB ARMED INVOLVING THE SAME DECEDENT.

> Defendant-Appellant answers this question "Yes".
> Plaintiff-Appellee would answer this question "No".
> The court below would answer this question "No".

STATEMENT OF FACTS

(Parenthetical references "T1"-"T5" and "S", respectively, refer to transcripts of the January 29, 30, 31, February 1, 5, 2007 jury trial and February 23, 2007 sentencing conducted in the Wayne Circuit Court before the Hon. Bruce U. Morrow.)

In an eleven count complaint, warrant and felony information, Defendant-Appellant Jason Owens Treadwell (hereinafter "Appellant") was charged with premeditated murder [MCL 750.316(a)], felony murder, [MCL 750.316(b)] and assault with intent to rob armed [MCL 750.89] as to complainant Charles Phipps, carjacking [MCL 750.529a] and armed robbery [MCL 750.529] as to complainant John Feazell, armed robbery and assault with intent to murder [MCL 750.83] as to complainant Marie Leinonen, assault with intent to rob armed as to complainants Myra Andrews and Roland Welborn, felon in possession of a firearm [MCL 750.224f] and felony firearm [MCL 750.227b].  The evens were all alleged to have occurred in various separate incidents during the early morning hours of April 28, 2006.  On January 29, 2007, he appeared for trial.  Following jury selection, (T1 3-146; T2 2), preliminary jury instructions (T2 3-15) and opening statements, (T2 15-32), the following evidence was presented:

Collette Phiipps identified complainant Charles Phipps. (T2 32-35).  Counsel stipulated that Appellant had a prior conviction and ineligible to possess a firearm on April 28, 2006.  (T2 36).

Detroit Police Officer Kirk Williams stated that at 3:35 a.m., April 28, 2006 he was dispatched to Joy Road and Longacre, where he saw a van abutting a light pole.  The windows were shot out.  Phipps in the street.  He appeared deceased.  Several shell casings were on Joy Road, two blocks away.  Three were in the center land by Phipps.  Three were closer to the curb.  Phipps' wallet and handgun were in the center console of the van.  (T2 37-59).

Kenneth Glenn stated that on April 28, 2006 he was with Phipps at a club on Joy Road and Evergreen.  At about 3:00 a.m., they parted company.  Phipps drove away in his van on Joy Road.  Glenn knew Phipps to carry his handgun in the console of the van.  (T2 60-64).

Jessie Guiden stated that she resides with Brion McConnell, also known as "Mr. B".  He is about 6'4" tall.  On April 28, 2006 she let him to drive her silver Honda SUV.  She knew Appellant,

1

but did not see him on that date. She did not know Elgie Grays or David Curry. (T2 65-70).

John Feazell stated that at about 3:00 a.m. that morning, he left a gas station on Southfield and Joy Road. Heading home, a small grey Honda SUV pulled in front of him and somebody said "This is the police". Three armed males exited the SUV. He described them as short, medium sized and tall. Two were in their 20's. The tall man was older and wore a cowboy hat. A fourth male remained in the rear of the SUV pointing a revolver. He identified McConnell as the tall man and Appellant as the short man. According to Feazell, his cell phone and a gold chain were taken from him by the medium sized male and he was told to get out of his car. Appellant struck him in the head with a gun and his car was driven away. Feazell ran northbound and flagged down a green car with an out-of-state license plate. The person declined to assist and drove away. As he ran to a friend's house on Archdale he heard "police", saw the grey Honda SUV and saw three armed men point weapons at the driver of the green car, return to the Honda and drive past him. Later, his car was located nearby. He was unable to identify anybody at a police lineup. (T2 71-108).

Dewayne Smith stated that in the early morning hours of April 28, 2006 he was driving a green Honda with an out-of-state license plate on Archdale. As he pulled onto his driveway, three black males - one short, one medium and one tall - exited a minivan with handguns, announced that they were police and told him to turn around. His wallet and money were taken. The short man struck him on the head with a gun and he was told to run to the corner. He identified Appellant as being approximately the side of that person. The incident lasted 20 to 25 seconds. He did not attend a lineup and was unable to identify any of the assailants. (T2 110-124).

Marie Leinonen stated that in the early morning hours of April 28, 2006 she was driving alone. An SUV pulled in front and blocked her. Four men exited carrying small guns yelling "police". She knew they were not police and attempt to back away. A shot was fired at her car, a short man moved past a slow moving tall man. They banged on her door. She opened the door. One man hit her on the head, demanded her purse and took it from the car. She identified Appellant as being about the size of that person. She drove away in a hail of gunfire and called the poilce from

2

a gas station. She attended several lineups but did not identify any of assailants. (T2 125-143).

Darryl Fulks stated that he knows Appellant, Elgie Grays, David Curry and Brion McConnell. According to a statement purportedly made by Fulks on May 1, 2006, Appellant came to his house two days earlier with a gold chain and a watch. Fulks acknowledged his signature on the document but denied making the statement and further averred that he is illiterate. (T2 144-152).

Felicia Walker stated that Appellant is her brother-in-law. She did not recall Appellant, Grays, Curry or McConnell being at her house on April 28, 2006, loading guns in her kitchen, leaving in a silver Honda SUV, hearing gunshots or seeing them return 15 minutes later and hearing Appellant and Grays argue about shooting an officer. She acknowledged testifying pursuant to an investigative subpoena and at a preliminary examination and to giving those answers, but maintained that she did so after being threatened with arrest if she did not make such statements. (T2 153-203).

Counsel stipulated to the waiver of five prosecution evidence technicians and to the admission of their photographs and reports from the various scenes. (T3 2-3, 49-57, 74-75). After other witness related matters were resolved, (T3 4-6), Monisha Walker stated that Appellant is her uncle. At 1:00 a.m., he came to her house alone. She let him in. He gave her $40.00 to readmit him later and she returned to sleep. He returned at 3:00 a.m. She did not know whether he was alone. She heard him mention that a friend had been hit by a car. She again returned to sleep. (T3 8-16).

Myra Andrews stated that she was in a Buick with Roland Welborn. At a stop sign, a grey Honda occupied by four black males cut them off. A man about 5'10" with braids exited and approached with a gun. She put her car in reverse and backed up to a driveway. Welborn exited and ran. She drove away. As she approached Joy and Southfield, she saw a vehicle crashed in to a pole and a person lying in the street. She was unable to pick anybody our of a police lineup. (T3 16-26).

Roland Welborn stated that he was with Andrews when they were cut off by a grey SUV. A man with a gun jumped out of the vehicle and approached. Andrews backed up to a driveway. He jumped out and ran between the houses. When he arrived at her house, he learned that she had gone to the police station. He was unable to make any identification. (T3 27-32).

3

Detroit Police Officer Lori Briggs is assigned to the Evidence Technician Unit. She stated that she took photographs, collected evidence and prepared a sketch to documented a crime scene at Joy Road and Longacre. She collected six nine millimeter shell casings, a spent bullet, a Sprint cell phone which, along with the sketch and photographs, were admitted as evidence. (T3 33-48).

Detroit Police Officer David Pauch is assigned to the Crime Lab Firearms and Tool Mark Identification Unit. He was qualified as an expert in that field. Paugh stated that he received and examined the bullets and spent casings recovered by the evidence technicians at the two venues. He concluded that all 16 casings were fired through the same weapon. He test fired the weapon recovered from Phipps' vehicle and determined that no identifiable bullets or shells were fired from that weapon. He examined a number of spent bullets and bullet fragments recovered and determined that five were fired from a single weapon and two others were fired from a second weapon. Another bullet was d bullet was fired by a third weapon. The other bullets and the bullet fragments were too badly damaged to make any comparisons. (T3 57-73).

William Steiner is a civilian employee of the Detroit Police Department. He is a forensic chemist in the Crime Lab. He was qualified as an expert in forensic chemistry. Steiner examined the gunshot residue test samples taken from the interior of the Honda. He detected the presence of gunshot residue on all eight samples taken from the vehicle, but could not determine their age. He collected samples from a liquor bottle and a cigarette butt and bucal swabs from Appellant, Grays, McConnell and Curry, and sent them off the DNA testing. (T3 76-85; c.f. T3 74-75).

Cathy Carr is a senior forensic biologist in the Detroit Police Crime Lab. She was qualified as a DNA expert. She compared the known DNA from Appellant, Grays, McConnell and Curry with DNA profiles taken from the liquor bottle and the cigarette butt. Neither excluded McConnell as a contributor. She did not find Appellant's DNA on any of the items (T3 87-97).

Detroit Police Officer Mary Gross is an evidence technician. She was qualified as an expert in fingerprint collection. Gross analyzed 16 spent shell casings and two live rounds of ammunition. She found no prints on any. From the Honda, she lifted prints from four pieces of paper, an

4

envelope and a photograph, which she turned over to Latent Prints. (T3 98-107).

Marcia McCleary is a civilian employed by the Detroit Police Department Laser Print Unit as a latent print examiner and was qualified as an expert in that field. She compared the known prints of McConnell, Grays, Appellant and Curry with the latent prints lifted by Gross. The reported a positive match to McConnell. (T3 108-111).

On April 29, 2006, Boguslaw Pietak conducted an autopsy on Charles Phipps. Pietak concluding that the cause of death was multiple gunshot wounds and that the manner of death was homicide. The parties stipulated to the report and sketch in lieu of his testimony. (T3 112).

Detroit Police Investigator Barbara Simon reported that Appellant met with an attorney. After the attorney left, he agreed to make a statement. According to the statement, he received a ride from Gray, who was driving McConnell's aunt's car McConnell and Curry were passengers. He had a .38. Gray had a Mack 9. McConnell had a .357. Curry had a silver gun of unknown caliber. Driving down Southfield, Gray became upset that another car was following too closely. He stopped, got out and shot at the car. The car backed up. Gray reentered his car and drove away, exiting at Joy Road. On Rutland Gray got out and began shooting at a minivan. When the van driver began to reach for something, Appellant and the others began to shoot as well. The van driver fell and they proceeded to Appellant's sister-in-law's house. Only one robbery took place. Others were unsuccessfully attempted. He offered to take her to where he hid the gun. (T3 113-133).

Detroit Police Sergeant Eddie Croxton is the officer in charge of the case. He obtained a Witness Statements from Felicia Walker at her house, and that he later took statements from Grays and McConnell. According to Croxton, McConnell is 6'2" tall and weighs 145 pounds. Gray is 5'9" and 200. Curry is about 6'0" and 200. (T3 135-149).

Without objection, the People's exhibits were admitted and the People rested. (T3 150-151). The defense recalled Monisha Walker, who stated that Appellant has a white van to drive that evening, which was at his mother's house. (T3 153-159). Joseph Walker stated that Walker was questioned at her home. Rather, she was taken downtown for questioning. (T3 160-164).

Appellant testified that on April 28, 2005 he paid McConnell to follow him to the auto repair shop to drop off his mother's van and drive him to the west side, where his van was parked. He rode with McConnell and Curry, whom he knew as "Tone". Grays and a person named Otis followed in a car. He arrived at the home of his sister-in-law on Rutland at 1:30 a.m., gave her money for school, made a telephone call and drove to a friend's house on Warren and Southfield. When nobody answered the door, he returned to Rutland at about 2:00 a.m. Afterwards, Grays came to the door with Curry. They stayed briefly before leaving separately. Appellant spent the night at the Rutland house. The next day, he was contacted by the police, who wanted to question him regarding the homicide. Appellant maintained that he was threatened, physically abused and denied an opportunity to speak with the attorney his mother had dispatched to the police station until after the "statement" was reduced to writing. He denied making the statement, denied any involvement in any of the crimes charged and denied having or seeing any guns. He signed the statement, but did so under duress and after being told that if he did so he would be released. (T3 165-210).

The defense rested. (T3 211). The assault with intent to rob armed as to complainants Andrews and Welborn were dismissed. (T4 2-3). Following a jury instruction conference, (T4 4-6), closing arguments, (T4 7-75) and final jury instructions (T4 75-102), Appellant was found guilty as charged of all nine remaining counts. (T5 3-8). From concurrent terms of life for felony murder and premeditated murder as to Charles Phipps, 285 months to 600 months for assault with intent to rob armed as to Phipps, carjacking and armed robbery as to John Feazell, armed robbery and assault with intent to murder as to Marie Leinonen and 2 to 5 years for felon in possession of a firearm, consecutive to a term of 2 years for felony firearm (S 12-13), Appellant now appeals as of right.

6

## ARGUMENT I

APPELLANT'S CONVICTIONS MUST BE REVERSED AND THE CHARGES DISMISSED, AS THE PROSECUTION FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE THAT HE WAS A PRINCIPAL OR AN AIDER AND ABETTOR IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

Issue Preservation and Standard of Review:

Moving for a directed verdict during trial or moving for a new trial is unnecessary in order to preserve a sufficiency issue for appeal. People v Patterson, 428 Mich 502, 505 (1987); MCR 6.419. The issue of insufficiency of evidence at trial is a question of law and is reviewed on appeal under the *de novo* standard of review, i.e., without deference to any ruling or lack thereof by the court below. People v Wolfe, 440 Mich 508 (1992); People v Tanner, 255 Mich App 369 (2003). The standard for dismissal requires that when the prosecution's evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. People v Hampton, 407 Mich 354, 372 (1979).

### Discussion

Appellant was charged with premeditated murder, felony murder and assault with intent to rob armed as to Charles Phipps, carjacking and armed robbery as to John Feazell, armed robbery and assault with intent to murder as to Marie Leinonen, assault with intent to rob armed as to Myra Andrews and Roland Welborn, felon in possession of a firearm and felony firearm. The charges as to Andrews and Welborn were dismissed before the case submitted to the jury. (T4 2-3). As to all of the remaining counts, he was found guilty as charged. (T5 3-8).

A conviction that is not supported by sufficient evidence under this standard violates due process of law. US Const, Ams V, XIV; Jackson v Virginia, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979). This Court should review the record in the case at bar, and conclude the prosecution failed to present legally sufficient evidence that Appellant either personally committed these offenses or that he aided and abetted someone else in committing those offenses. The evidence, viewed in a light most favorable to the prosecution, was insufficient to support his convictions. People v Tanner, supra at 417 discussed the standard of review of the sufficiency of the evidence:

7

A conviction that is not supported by sufficient evidence under this standard violates due process

of law.  US Const, Ams V, XIV; Jackson v Virginia, supra.

> When ruling on a motion for a directed verdict, the court must consider the evidence presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proved beyond a reasonable doubt. Jackson v Virginia, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979); People v Jolly, 442 Mich 458, 465; 502 NW2d 177 (1993); People v Aldrich, 246 Mich App 101, 122; 631 NW2d 67 (2001). Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime. Jolly, supra at 466. This Court applies the same standard during review of the trial court's ruling on such a motion. People v Daniels, 192 Mich App 658; 482NW2d176 (1992).

## A. THERE WAS INSUFFICIENT EVIDENCE OF PREMEDITATED MURDER

In order to convict a defendant of a premeditated murder, the prosecution must prove that

the accused had an actual intent to kill, and that that intent was premeditated and deliberate.  People

v Anderson, 209 Mich App 527 (1995).  In Tanner, supra at 417-418, the Court of Appeals cited to

the opinion in People v Plummer, 229 Mich App 293, 301 (1998), for the proposition that while

premeditation and deliberation can be inferred from the surrounding circumstances, the inference

cannot be merely speculative and must have support in the record.

The jury in this matter was instructed that they could convict Appellant either as a principal

to the homicides, or as an aider and abettor.  (T4 85-89).  In Tanner at 418-419, the Court detailed

the standards under Michigan law for conviction as an accessory to the charged offenses:

> To support a finding that defendant aided and abetted Cady in committing felony murder, the prosecution must show that (1) the crime charged was committed by defendant or some other person, (2) defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that he gave aid and encouragement. Id. An aider and abettor must have the same requisite intent as that required of a principal. People v Barrera, 451 Mich 261, 294; 547 NW2d 280 (1996). Thus, "'the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm.'" Turner,[People v Turner, 213 Mich App 558 (1995)] supra at 567, quoting People v Flowers, 191 Mich App 169, 178; 477 NW2d 473 (1991). To sustain an aiding and abetting charge, the guilt of the principal must be shown beyond a reasonable doubt, but the principal need not be convicted. Barrera, supra at 294-295; Turner, supra, 569. "Rather, the prosecutor need only introduce sufficient evidence that the crime was committed and that the defendant committed it or aided and abetted it." Id.

8

In the instant case the prosecution failed to present legally sufficient evidence, under these standards of review, to support the convictions for first-degree, premeditated murder under either a principal or an aider and abettor theory. The prosecution did not present evidence, even in a light viewed most favorably to their position, that Appellant personally shot robbed and shot Phipps or that he gave aid and assistance to the principal(s) with either an intent to commit the charged offenses or knowledge that the principal(s) had that intent.

Other than Appellant's alleged statement, there was no direct evidence presented as to who actually caused the death of Phipps. Despite the prosecutor's efforts to speculate that Appellant was involved in the killing ans the assaults, the case was clearly lacking. Other than the statement - which Appellant denied making - and testimony that Appellant was similar in size to one of the four assailants, there was absolutely no evidence presented in the case that he was even present when the shooting took place. Although Feazell and Leinonen were able to identify Appellant when seated in court at counsel's table, neither was unable to identify him from a police lineup.

Appellant's statement was the only evidence as to the purported circumstances in this case. No other witness could testify as to the circumstances under which the death occurred. On that basis, there was legally insufficient evidence that Appellant was the principal or that he aided and abetted the principal while either specifically intending that Phipps be killed, or knowing that the principals had that specific intent. This Court should hold that the prosecution failed to present sufficient evidence to permit the jury to find proof beyond reasonable doubt as to all of the essential elements of a charge of first-degree, premeditated murder, either as a principal or as an accessory. The convictions on those charges violated Appellant's constitutional right to due process of law.

B. THERE WAS INSUFFICIENT EVIDENCE OF FELONY MURDER, ASSAULT WITH INTENT TO ROB ARMED, ARMED ROBBERY, CARJACKING AND ASSAULT WITH INTENT TO MURDER

Because the theory of premeditated murder was merged with the alternative conviction for felony-murder, it could be argued in response to this issue that if the prosecution presented legally sufficient evidence on that charge, Appellant's conviction was constitutionally valid, and thus can

9

be revived if the premeditated murder conviction were overturned. However, the prosecution's case on the felony-murder charge carried the same insufficiency as the premeditated theory. There was no evidence that Appellant planned to rob Phipps, and personally killed Phipps in the course of an assault with intent to rob him, and no evidence that Appellant aided and abetted anyone else in committing either such offense. There was also no evidence that Appellant had any intent to carjack or rob Feazell, rob Leinonen or assault her with the specific intent to with intent to murder her.

Larceny was the predicate felony for the charge of felony murder. Even assuming that Appellant voluntarily made a statement to the police, there was no evidence that any larceny took place or that Appellant was involved in the commission thereof. Under Michigan law, while the homicide does not have to be contemporaneous with the underlying felony, the prosecution must prove that the accused intended to commit the underlying felony at the time the homicide occurs. People v Brannon, 194 Mich App 121 (1992); People v Kelly, 231 Mich App 627, 643 (1998). At most the prosecution proved that Appellant was merely present. Assault with intent to rob armed is also a specific intent crime that must be shown from the facts in evidence. The jury cannot speculate on a defendant's intent to commit robbery merely because an assault occurred. People v Barnes, 30 Mich App 586 (1971), *remanded on other grounds*, 387 Mich 770 (1972).

As to the charges involving complainants Feazell and Leinonen, assault with intent to murder is a crime requiring specific intent. Roberts v People, 19 Mich 401 (1870); People v Phillips, 37 Mich App 242 (1971); People v Fields, 64 Mich App 166 (1975). Actual intent to kill is required. People v Taylor, 422 Mich 554 (1985). Armed robbery requires the intent to permanently deprive an owner or his property. People v Wilbert, 105 Mich App 631 (1981). There was no evidence that Appellant was involved in the commission of any of the assaults or that he possessed or shared any assaultive intent of another. While carjacking is a general intent crime, People v Davenport, 230 Mich App 577 (1998), there is no evidence of his participation in that offense either.

This Court should now vacate the murder, carjacking and assault convictions. Absent any evidence of the same, the weapons offenses must also be dismissed.

10

## ARGUMENT II

### APPELLANT IS ENTITLED TO A NEW TRIAL WHERE DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO SEVER UNRELATED OFFENSES.

#### Issue Preservation and Standard of Review

Appellant may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that likely affected the outcome of the trial. People v Henry, 239 Mich App 140 (1999). The performance and prejudice prongs of an ineffective assistance of counsel claim are mixed questions of law and fact reviewed *de novo*. Strickland v Washington, 466 US 668, 698; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

#### Standard of Review

A defendant accused of a crime has the right under the federal and state constitutions to the effective assistance of counsel. U.S. Const., Am VI; Const. 1963, Art. 1, § 20; Strickland, 466 US at 668. To prevail on an ineffective assistance of counsel claim, a defendant must meet two criteria. He must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. In so doing, the defendant must rebut a presumption that counsel's performance was the result of sound trial strategy. Id. at 690. Second, the defendant must show the deficient performance was prejudicial. Id. at 687. Prejudice is established where there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 694; People v LaVearn, 448 Mich 207 (1995).

#### Discussion

Appellant faced charges for four unrelated assaults involving five persons during the early morning hours of April 28, 2006. All involved random opportunistic crimes upon motorists on the west side of Detroit. None of the surviving victims were able to identify Appellant from police lineups. Two later identified Appellant as he sat in court. It was error for counsel not to make a motion to sever these offenses. Although similar crimes, they were all entirely separate transactions

11

or occurrences which took place at four different locations. The inclusion of all four incidents in one trial provided the evidence of propensity, bad character, and additional identifications that resulted in Appellant's ultimate convictions.

MCR 6.120(B) establishes that on "the defendant's motion, the court must sever unrelated offenses for separate trials." The rule defines related offenses as based either on "the same conduct," or "a series of connected acts or acts constituting part of a single scheme or plan." MCR 6.120(B). Here, the four separate incidents represented different conduct. Although in some incidents the complainants claimed that the assailants held themselves out to be police officers, there was no evidence that the acts were either connected or part of a common scheme or plan.

When a defendant files a timely motion, the court must sever two or more offenses when they are committed at separate times and their joinder solely based on the same or similar character. People v Tobey, 401 Mich 141 (1977). In Tobey, the Supreme Court required severance of two separate charges for heroin sales to the same person two weeks apart. The Court noted that for "joinder purposes, each sale is separate conduct, a separate act and transaction, and a separate and distinct criminal offense." Id., 401 Mich at 149. Similarly, the four charged incidents in Appellant's trial took place in different locations, with no signs that the offenses were connected or dependant on one another. They were completely unrelated crimes.

Tobey cited legal commentary to provide examples of the relationships that MCR 6.120(B) permitted for joinder of separate offenses: First, "same conduct" would allow offenses charged together like multiple deaths from reckless motor vehicle operation; second, a "series acts connected together" would allow joinder for offenses committed to aid in accomplishing another, such as burglary followed by larceny; finally, "a single scheme or plan," would allow joinder for a series of false accounting practices designed to conceal theft from a bank. Id at 151-152. Like the two drug deals in Tobey, the four separate offenses here fit under none of these exceptions.

The offenses in Appellant's case provide almost identical circumstances to the ones that required severance in People v Daughenbaugh, 193 Mich App 506 (1992). In Daughenbaugh, the

12

three robberies involved different victims at a party store, a gas station, and an automotive store over a three month period, all committed by a robber dubbed the "Blue Bandit," for wearing a blue hooded sweatshirt and blue jeans. Id, 193 Mich App at 508. In ordering severance of three of the robberies, the court found no conduct sufficiently identical or sufficiently connected and no evidence that one robbery facilitated another. Id, 193 Mich App at 510.

The court in Daughenbaugh also rejected a theory that the crimes should be joined since they would be admissible as other acts evidence. Id, 193 Mich App at 510-513. The need to adhere to precedent and the court rule, and the fact that the similar acts did not actually prove identity or show a signature crime prohibited joinder based on admissible other acts evidence. Id, 193 Mich App at 510-513. In Appellant's case, the offenses should have been severed when they occurred in different locations and at different times, with no signature or proof of identity as to all.

In Appellant's trial, counsel exhibited deficient performance in failing to make a motion to sever the charges related to five offenses occurring during the course of four separate transactions or occurrences. MCR 6.120(B) explicitly would have provided for severance if counsel had made the appropriate motion. Instead, counsel's inaction allowed the jury to hear of four separate gunpoint robberies allegedly committed or attempted to be committed by Appellant. Most significantly, rather than five separate incidents, none with any positive lineup identification and most with no eyewitness identification, the jury heard two different eyewitness identifications. No reasonable trial strategy could have accounted for this failure to sever the cases, when the result was evidence of a propensity to commit robberies and multiple identifications.

This deficient performance certainly resulted in prejudice to Appellant's defense. At a minimum, he would have likely been acquitted of the cases where no complainant could identify him as a participant at trial. The other evidence in this robbery consisted of an alleged statement indicating that he was merely present. The multiple eyewitness identifications and propensity to commit robberies likely convicted Appellant in the eyes of the jury. The failure to sever four separate cases represented prejudicial performance requiring a new trial.

13

ARGUMENT III

THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY INVOLVING MULTIPLE PUNISHMENT FOR THE SAME OFFENSE REQUIRES THE COURT TO MODIFY THE JUDGMENT OF SENTENCE TO SPECIFY A SINGLE COUNT FOR FIRST DEGREE MURDER SUPPORTED BY TWO THEORIES (PREMEDITATED AND FELONY MURDER), AND TO VACATE THE SEPARATE SENTENCE FOR ASSAULT WITH INTENT TO ROB ARMED INVOLVING THE SAME DECEDENT.

Issue Preservation and Standard of Review

Appellant did not previously raise this issue in the trial court. However, a defendant may directly appeal an error of law involving a term of his sentence. See, e.g., People v Cieslinski, 139 Mich App 675 (1984) (jail credit); People v Greenberg, 176 Mich App 296 (1989) (restitution as condition of parole); People v Wybrecht, 222 Mich App 160 (1997) (only appellate court can invalidate sentence for lack of proportionality). The *de novo* standard of review applies to double jeopardy claims. People v White, 212 Mich App 298, 304-305 (1995).

Discussion

US Const, Am V, made applicable to state prosecutions by the Due Process Clause of US Const, Am XIV, provides: "No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb ...." See also, Const 1963, art 1, § 15.

More particularly, it is well settled in our State that the protection against double jeopardy precludes a conviction and sentence for the same felony that is the predicate offense for a felony murder conviction. The remedy is to vacate the conviction for the underlying felony. People v Harding, 443 Mich 693, 714 (1993); People v Wilder, 411 Mich 328, 347 (1981); People v Minor, 213 Mich App 682, 690 (1995); People v Bigelow, 229 Mich App 218, 221-222 (1998).

Furthermore, where the jury convicts a defendant of both first degree premeditated and felony murder involving the same decedent, the defendant should be sentenced on a single count of first degree murder, supported by alternate theories. People v Bigelow, supra, p 222; People v McGuff, 461 Mich 881 (1999).

In the present case, the jury convicted Appellant of first degree premeditated murder, first

14

degree felony murder, and assault with intent to rob armed, all involving the decedent, Charles Phipps. (T5 3-8). The prosecutor used a larceny (i.e., assault with intent to rob armed) as the predicate offense for the felony murder charge. Accordingly, if this Court does not otherwise vacate Appellant's convictions, it should at least remand for correction of the judgment of sentence to vacate one count each of assault with intent to rob armed and murder.

## RELIEF REQUESTED

WHEREFORE, Defendant-Appellant Jason Owens Treadwell prays this Honorable Court for the following alternative relief: that it vacate his convictions and sentences; that it remand his cause to the Wayne Circuit Court for a new trial; or that it correct the judgment of sentence.

JONATHAN B.D. SIMON  (P35596)
Attorney for Appellant
645 Griswold, Suite 717
Detroit, Michigan  48226
(313) 964-0533

Dated:  November 6, 2007

15

ATTACHMENT  C

*People v. Treadwell*, Unpublished opinion per curiam of the
Michigan Court of Appeals, issued July 15, 2008
(Docket No. 277363)

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JASON OWENS TREADWELL,

      Defendant-Appellant.

UNPUBLISHED
July 15, 2008

No. 277363
Wayne Circuit Court
LC No. 06-008315-01

Before: Owens, P.J., and O'Connell and Davis, JJ.

PER CURIAM.

      After a jury trial, defendant Jason Owens Treadwell was convicted of the first-degree murder of Detroit Police Officer Charles Phipps, MCL 750.316(1)(a), the felony murder of Phipps, MCL 750.316(1)(b), assault with intent to rob Officer Phipps while armed, MCL 750.89, carjacking of John Feazell, MCL 750.529a(1), two counts of armed robbery for the robberies of Feazell and Marie Leinonen, MCL 750.529, assault with intent to murder Leinonen, MCL 750.83, felon in possession of a firearm, MCL 750.224f(3), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1).[1]  These offenses

---

[1] Defendant was also charged with two counts of assault with intent to rob while armed, regarding the assaults of Myra Andrews and Roland Wellborn, and one count of armed robbery for the robbery of Dewayne Smith.  However, the trial court granted defendant's motion for directed verdict with regard to the charges of assault with intent to rob while armed against Andrews and Wellborn.  The trial court failed to ask the jury on the record for its verdict regarding the armed robbery of Smith, so the trial court dismissed this count.

Brion McConnell, Elgie Grays and David Currie, Jr., were also charged in relation to this crime spree.  McConnell pleaded guilty to second-degree murder, armed robbery of Feazell and Leinonen, and felony-firearm.  Grays and Currie were tried separately from defendant.  Grays was convicted of one count of assault with intent to commit murder, one count of carjacking, three counts of armed robbery, one count of second-degree murder, one count of felony murder, one count of felon in possession of a firearm, and one count of felony-firearm.  Currie was convicted of one count of assault with intent to commit murder, one count of carjacking, three counts of armed robbery, one count of felon in possession of a firearm, and one count of felony-firearm.  In a separate opinion, we affirmed Grays' and Currie's convictions.  *People v Grays*, unpublished opinion per curiam of the Court of Appeals, issued July __, 2008 (Docket Nos. 277866 & 278072).

occurred during a crime spree targeting various motorists between 3:00 a.m. and 3:35 a.m. on April 28, 2006, on the west side of Detroit. The trial court sentenced defendant to life imprisonment without parole for each murder conviction, 285 months to 50 years' imprisonment for each assault with intent to rob while armed, carjacking, armed robbery and assault with intent to commit murder conviction, two to five years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm, but remand for correction of the judgment of sentence.

## I. Sufficiency of the Evidence

First, defendant argues that the prosecution failed to present legally sufficient evidence to support his convictions. We review sufficiency of the evidence claims de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). We "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999) (internal quotations omitted). Circumstantial evidence and reasonable inferences arising from that evidence may be satisfactory proof of the elements of a crime. *People v Lee*, 243 Mich App 163, 167–168; 622 NW2d 71 (2000).

## A. First-Degree Murder

Defendant contends that the prosecution failed to present legally sufficient evidence to support his first-degree premeditated murder conviction. We disagree. "The elements of first-degree murder are that the defendant killed the victim and that the killing was . . . 'willful, deliberate, and premeditated . . . .'" *People v Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2002). First-degree murder may be established if the defendant had the specific intent to kill. *People v Graham*, 219 Mich App 707, 710–711; 558 NW2d 2 (1996). To show premeditation and deliberation, "'[s]ome time span between [the] initial homicidal intent and ultimate action is necessary . . . .'" *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003), quoting *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979) (internal citations omitted). "The interval between the initial thought and ultimate action should be long enough to afford a reasonable person time to take a 'second look.'" *Id.*

Defendant was convicted of first-degree murder under an aiding and abetting theory. "[T]o convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.'" *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).

A reasonable jury could have found that defendant aided in Phipps' murder. Defendant admitted that he, McConnell, Grays, and Currie carried guns on the night of the shooting. They participated in robberies and attempted robberies within an hour and a few blocks away from Joy Road, where Phipps was found dead. Admittedly, no witnesses observed Phipps' shooting and defendant's gun was not recovered or connected to the bullets that killed Phipps. Regardless, even if defendant was not the shooter, there was evidence that his acts encouraged and assisted

-2-

the shooting. Defendant told Investigator Barbara Simon that Grays was the first person to shoot at Phipps' minivan. However, when Phipps began to run away, defendant encouraged and assisted Grays by also shooting at Phipps. Defendant's knowledge of Grays's intent can be inferred from the assistance he provided Grays. Therefore, there was sufficient evidence to convict defendant of first-degree premeditated murder under an aider and abettor theory.

## B. Felony Murder

Defendant contends that the prosecution failed to present legally sufficient evidence to support his felony murder conviction. We disagree.

> The elements of first-degree felony murder are: "'(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b), here larceny.]'" [*People v Bobby Smith*, 478 Mich 292, 318–319; 733 NW2d 351 (2007), quoting *Carines*, *supra* at 758–759 (citation omitted).]

Phipps died from multiple gunshot wounds. The existence of defendant's intent to commit murder can be inferred from his intentional discharge of his firearm at Phipps when he began to run away.

Finally, Phipps was killed during an attempted larceny, satisfying the third element of felony murder. MCL 750.316(1)(b). The elements of larceny are

> (1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, (5) the taking must be without the consent and against the will of the owner. [*People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999), quoting *People v Anderson*, 7 Mich App 513, 516; 152 NW2d 40 (1967).]

"[A]n 'attempt' consists of (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001).

The circumstances surrounding the shooting suggest that defendant, McConnell, Grays and Currie attempted to take property from Phipps. Defendant admitted that they robbed one person and attempted to rob others that night. Specifically, while driving a gray Honda CRV, they pretended to be the police and stole jewelry, wallets and one vehicle from motorists. In the midst of these robberies, they encountered Phipps in his minivan. A reasonable juror could infer that defendant and the others in the Honda CRV used a similar tactic with Phipps.[2] Because

---

[2] Defendant told police investigators that he was unsure if anything was taken from Phipps.

-3-

there was sufficient evidence to prove that defendant attempted to commit larceny against Phipps, the predicate offense has been established and a reasonable jury could have found defendant guilty of felony murder.

## C. Assault with Intent to Rob while Armed

Defendant contends that the prosecution failed to present legally sufficient evidence to convict him of assault with intent to rob Phipps while armed. We disagree. "'The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed.'" *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003), citing *People v Cotton*, 191 Mich App 377, 391; 478 NW2d 681 (1991). Defendant admitted that he was armed with a .38 caliber gun. Defendant, McConnell, Grays and Currie shot at Phipps. Additionally, their intent to steal from Phipps may be inferred from their intent to rob all motorists stopped during their crime spree. Therefore, there was sufficient evidence to convict defendant of assault with intent to rob while armed.

## D. Carjacking

Defendant contends that the prosecution failed to present legally sufficient evidence to convict him of carjacking. We disagree. To convict a defendant of carjacking, the prosecution must prove that the defendant, by force or violence, by threat of force or violence, or by putting in fear, took a motor vehicle in the presence of the lawful possessor of it. *People v Davis*, 468 Mich 77, 80 n 2; 658 NW2d 800 (2003). In this case, Feazell testified that defendant and several other men pointed their guns at him, forced him from his vehicle, stole his gold chain and cellular phone, hit him in the head and stole his vehicle. Even if defendant did not drive Feazell's vehicle away, defendant's knowledge of the driver's intent to do so can be inferred from his assistance in forcing Feazell from the vehicle. Consequently, the prosecution presented sufficient evidence to convict defendant of carjacking.

## E. Armed Robbery

Defendant contends that the prosecution failed to present legally sufficient evidence to convict him of the armed robbery of Feazell and Leinonen. We disagree. The elements of armed robbery are "'(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.'" *People v Ford*, 262 Mich App 443, 458; 687 NW2d 119 (2004), citing *Carines, supra* at 757. Both Feazell and Leinonen identified defendant as one of the men in the Honda CRV who approached them armed with guns. After the men stole Feazell's gold chain and cellular telephone, defendant threatened to shoot Feazell and hit him in the head with his gun. Darryl Fulks saw defendant with a gold chain after the robbery. Leinonen testified that defendant hit her in the head with a gun and stole her purse. The men also shot at Leinonen's vehicle as she escaped. Defendant's statement to Investigator Simon that "Only one person got robbed . . . . We attempted to rob other people, but they got away," sufficiently demonstrates defendant's intent to permanently deprive Feazell and Leinonen of their property. Therefore, sufficient evidence existed to convict defendant of these armed robberies.

-4-

## F. Assault with Intent to Murder

Defendant contends that the prosecution failed to present legally sufficient evidence to convict him of assault with intent to murder Leinonen. We disagree. The elements of assault with intent to murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147–148; 703 NW2d 230 (2005) (internal quotations omitted). Leinonen testified that she initially attempted to escape from the men in the CRV. However, when she backed away, one of the men shot at her vehicle. After she was robbed, Leinonen ducked and drove away while the men shot at her vehicle and broke her windows. Officer David Pauch explained that evidence from more than one gun was recovered at the scene of this robbery. Although it is unclear who shot at Leinonen's vehicle, defendant's acts encouraged and assisted the shooting. Defendant stole Leinonen's purse and hit her after the initial shooting. Therefore, a reasonable juror could infer that defendant was aware of the shooter's intent to shoot at Leinonen if she attempted to escape. Thus, there was sufficient evidence to convict defendant of assault with intent to murder Leinonen as an aider and abettor.

## G. Felon in Possession of a Firearm/Felony-Firearm

Finally, defendant contends that the prosecution failed to present legally sufficient evidence to convict him of either weapons offense. We disagree. Defendant bases his claim on his assertion that the prosecution presented insufficient evidence to convict him of the murder, carjacking, and assault charges. Because we concluded that the prosecution presented sufficient evidence to support these convictions, we conclude that defendant's assertions that the prosecution presented insufficient evidence to establish his weapons convictions lack merit.

## II. Ineffective Assistance of Counsel

Next, defendant argues that his attorney was ineffective because he failed to move to sever these offenses, which involved separate victims and circumstances. We disagree. Our review of a claim of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id.* We review the trial court's factual findings for clear error and its constitutional determinations de novo. *Id.* at 484–485.

Effective assistance is strongly presumed and the reviewing court should not evaluate an attorney's decision with the benefit of hindsight. *Id.* at 485; *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). To demonstrate ineffective assistance, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. *Grant, supra* at 485–486. Prejudice exists if a defendant shows a reasonable probability that the outcome would have been different but for his attorney's errors. *Id.* at 486.

A criminal defendant is entitled to separate trials on unrelated offenses pursuant to MCR 6.120(B). *People v Daughenbaugh*, 193 Mich App 506, 509; 484 NW2d 690 (1992), mod 441 Mich 867 (1992). "Joinder is appropriate if the offenses are related." MCR 6.120(B)(1). "Offenses are related if they are based on the same conduct or transaction, a series of connected acts, or a series of acts constituting parts of a single scheme or plan. *Id.* This Court has noted,

> "'[S]ame conduct' refers to multiple offenses 'as where a defendant causes more than one death by reckless operation of a vehicle.' 'A series of acts connected together' refers to multiple offenses committed 'to aid in accomplishing another, as with burglary and larceny or kidnapping and robbery.' 'A series of acts . . . constituting parts of a single scheme or plan' refers to a situation 'where a cashier made a series of false entries and reports to the commissioner of banking, all of which were designed to conceal his thefts of money from the bank.'" [*Daughenbaugh, supra* at 509–510, quoting *People v Tobey*, 401 Mich 141, 151–152; 257 NW2d 537 (1977).]

Joinder is also appropriate for offenses within a close time-space sequence, such as offenses occurring within an hour and a half and having arisen from substantially the same transaction. *Id.* at 510.

In this case, the offenses against Feazell, Smith, Leinonen, Phipps, Andrews, and Wellborn occurred between 3:00 a.m. and 3:35 a.m. on April 28, 2006. Furthermore, the offenses each occurred within several blocks on the west side of Detroit. In each offense, the assailants drove a vehicle resembling a gray Honda CRV and targeted motorists. Feazell, Smith, and Leinonen testified that their assailants pretended to be police officers, carried guns and hit them in the head. The motorists also described the assailants' physiques similarly. Finally, defendant admitted that he robbed one person and attempted to rob others during those early-morning hours. Therefore, because these offenses occurred within a close time-space sequence, they arose out of substantially similar transactions, and because joinder was in the interest of judicial economy, the offenses were properly joined. Consequently, a motion to sever would have been futile, and therefore defense counsel's failure to make such a motion was not ineffective. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003) ("[C]ounsel does not render infective assistance by failing to raise futile objections.").

### III. Double Jeopardy

Finally, defendant argues that the trial court denied him the constitutional protection against double jeopardy when it failed to vacate one of his first-degree murder convictions at sentencing. Although defendant was convicted of felony murder based on the predicate offense of larceny of Phipps, he also argues that assault with intent to rob Phipps while armed was actually the predicate offense of felony murder and thus this conviction should also have been vacated at sentencing to protect against double jeopardy. We agree.

"No person shall be subject for the same offense to be twice put in jeopardy." *Bobby Smith, supra* at 298, citing Const 1963, art 1, § 15. The purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant's interest in not enduring more punishment than was intended by the Legislature. *People v Calloway*, 469 Mich 448, 451; 671 NW2d 733 (2003).

This Court has held that dual convictions for both first-degree premeditated murder and first-degree felony murder arising from the death of a single victim violate double jeopardy. *People v Bigelow*, 229 Mich App 218, 220; 581 NW2d 744 (1998). To protect a defendant's rights, we must "modify defendant's judgment of conviction and sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder." *Id.* Therefore, because the judgment of sentence orders defendant to serve life imprisonment for his first-degree premeditated murder and felony murder convictions, we remand to the trial court for a correction of the judgment of sentence reflecting one conviction and one sentence of first-degree murder supported by two theories.

Next, "convictions of and sentences for both felony murder and the predicate offense violate[] [a defendant's] right against double jeopardy . . . ." *Id.* at 221–222. In addition, convictions for two criminal offenses are precluded where one offense is a necessarily included lesser offense of the other. See *Bobby Smith, supra* at 316. Attempted larceny, the predicate offense of defendant's felony-murder conviction, is a necessarily included lesser offense of assault with intent to rob while armed. Therefore, attempted larceny was subsumed into the charge of assault with intent to rob while armed.[3] We vacate defendant's assault with intent to rob while armed conviction to protect defendant against double jeopardy and remand to the trial court for a corresponding correction of the judgment of sentence.

We affirm defendant's convictions, but we remand for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Peter D. O'Connell
/s/ Alton T. Davis

---

[3] We note that this case can be distinguished from *Smith, supra* at 317 n 15, where the larceny offense was not subsumed into the greater offense of armed robbery because sufficient evidence existed in that case for the jury to find beyond a reasonable doubt that the defendant separately committed armed robbery and larceny by taking separate property from separate victims. In contrast, evidence in this case of larceny and assault with intent to rob while armed is derived from the same offense against Phipps.

-7-

# ATTACHMENT D
*People v Treadwell*, 483 Mich 881 (2009)
(Docket No. 137126)

# rder

January 27, 2009

Marilyn Kelly,
Chief Justice

137126 & (58)(62)

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
     Plaintiff-Appellee,

v

SC: 137126
COA: 277363
Wayne CC: 06-008315-01

JASON OWENS TREADWELL,
     Defendant-Appellant.

_____ /

     On order of the Court, the application for leave to appeal the July 15, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The motion to remand is DENIED. The motion for production of documents is DENIED.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 27, 2009

_____
Clerk

p0120

ATTACHMENT  E
Post-conviction Motion for Relief from Judgment
Filed April 2, 2010

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff,

                                  Case No. 06-8315-01

vs

                                  Judge BRUCE MORROW

JASON TREADWELL
          Defendant.
_____/
WAYNE COUNTY PROSECUTOR

JASON TREADWELL
IN PRO PER
BROOKS CORRECTIONAL FACILITY
2500 S. SHERIDAN DRIVE
MUSKEGON HEIGHTS, MI 49444.
_____/

## MOTION FOR RELIEF FROM JUDGEMENT

NOW COMES, JASON TREADWELL, bringing this Motion pursuant to MCR

6.502 *et seq.*, and states as follows:

1.     That JASON TREADWELL was convicted in the WAYNE County Circuit

       Court in case file number 06-8315.

2.     Defendant is confined at Brooks Correctional Facility, 2500 S. Sheridan

       Drive. Muskegon Heights, MI 49444.

3.     Defendant was found guilty following a jury trial of the following offenses:

       a.     Felony Murder;

       b.     First Degree Murder;

       c.     Assault with Intent to Rob While Armed;

       d.     Carjacking

1

    e.     Armed Robbery;

    f.     Assault with Intent to Murder;

    g.    Felon in Possession of a Firearm; and

    h.    Felony Firearm.

4.    Defendant was sentenced as follows:

    a.    Life sentences for the murder convictions

    b.    285 months to 50 years on Assault with Intent to Rob While Armed, Carjacking, Armed Robbery, and Assault with Intent to Murder,

    c.    2 years to 5 years for Felon in Possession of a Firearm, and

    d.    2 years consecutive for Felony Firearm.

5.    The judge who presided at the plea process and who sentenced Defendant was Wayne Circuit Judge BRUCE MORROW.

6.    The relief requested is a Ginther hearing to explore Defendant's claim of ineffective assistance of counsel, and ultimately, for a new trial.

7.    One basis for the relief requested is prosecutorial misconduct in that the prosecution withheld exculpatory evidence.

8.    Another basis for the relief requested is that Defendant did not have a fair trial due to ineffective assistance of counsel for failing to present an exculpatory witness.

9.    Another basis for the relief requested is that Defendant did not have a fair trial due to ineffective assistance of counsel by counsel's failing to request a mistral due to an improper jury influence.

10.    Another basis for the relief requested is that Defendant did not have a fair

trial due to ineffective assistance of counsel for counsel's failure to adequately prepare for trial.

11.    All of the issues mandate that Defendant's conviction be vacated, and Defendant be granted a new trial.

Respectfully submitted,

Lawrence J. Bunting (P27111)
3190 Rochester Road, Suite 100
Troy, MI 48084
(248) 689-4200

3

STATE OF MICHIGAN

IN THE  WAYNE COUNTY CIRCUIT COURT

PEOPLE OF THE STATE OF MICHIGAN,
    Plaintiff,

            Case No. 06-8315-01

vs

            Judge BRUCE MORROW

JASON TREADWELL
    Defendant.
_____/
WAYNE COUNTY PROSECUTOR

JASON TREADWELL
IN PRO PER

_____/


## DEFENDANT JASON TREADWELL'S  BRIEF IN SUPPORT OF
## MOTION FOR RELIEF FROM JUDGEMENT


Facts and proceedings.

   DEFENDANT  JASON TREADWELL  was convicted in the Wayne  County

Circuit Court in case file number 06-8315  following a jury trial of the following

offenses:

    1.  Felony Murder;

    2.  First Degree Murder;

    3.  Assault with Intent to Rob While Armed;

    4.  Carjacking

    5.  Armed Robbery;

    6.  Assault with Intent to Murder;

1

7.      Felon in Possession of a Firearm; and

8.      Felony Firearm.

DEFENDANT was sentenced as follows: Defendant received concurrent Life sentences for the murder convictions; Defendant received concurrent sentences of 285 months to 50 years on Assault with Intent to Rob While Armed, Carjacking, Armed Robbery, and Assault with Intent to Murder convictions, Defendant received a sentence of 2 years to 5 years for the Felon in possession conviction, and a consecutive sentence on 2 years on the felony firearm conviction.

Defendant appealed by right his convictions and sentences to the Michigan Court of Appeals.  The Court of Appeals affirmed, but remanded for correction of the Judgment of Sentence. [1]

An application for leave to appeal was filed in the Michigan Supreme Court, but was denied by the Michigan Supreme Court on January 27, 2009. [2]

Statement of Issues Presented

I      WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO INVESTIGATE AND PREPARE FOR TRIAL

II     WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO CALL AN EXCULPATORY WITNESS?

III    WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO SEEK AN EXPERT WITNESS TO TESTIFY AS

---

[1] People v Treadwell, Court of Appeals Docket No. 277363, unpublished per curiam, released July 15, 2008.

[2] People v Treadwell, Supreme Court Docket No. 137126

2

TO FALSE IDENTIFICATION AND FALSE CONFESSIONS?

Statement of Facts

Defendant Jason Treadwell [Defendant] was charged in an eleven count complaint with Premeditated Murder (MCL 750.316a); Felony Murder (MCL750.316 b); Assault with Intent to Rob While Armed (MCL 750.89 [as to complainant Charles Phipps] , Carjacking (MCL 750.529a) and Armed Robbery (MCL 750.89) as to Complainant John Feazell, armed robbery and assault with intent to commit murder as to complainant Marie Leinonen, assault with intent to rob armed as to complainants Myra Andrews and Roland Welborn, felon in possession of a firearm (MCL 750.224f) and felony firearm (MCL 750.227b).

These charges all arose from events occurring during separate incidents on April 28, 2006.

At the trial, complainant Charles Phipps was identified by Collette Phipps. T 2, 32 - 35.[3]

Defense counsel stipulated that Defendant had a prior conviction and therefore was ineligible to possess a firearm on April 28, 2006. T2, 36.

Detroit police officer Kirk Williams testified that he discovered Phipps body in the street at Joy Road and Longacre in the City of Detroit. There were shell

---

[3] References to transcripts are "T1" through "T5" and "S" refer to transcripts of the January 29, 30, 31, February 1, 5 2007, jury trial, and the February 23, 2007 sentencing in Wayne Circuit Court before the Honorable Bruce U. Morrow.

casing in the street, with some in the center lane near Phipps body, and others closer to the curb.  T2, 37 - 59.

Jessie Guiden testified that she resided with Brion McConnell, and that on April 28, 2006, she let him drive her silver Honda SUV.   T2, 65 - 70.

Complainant John Feazell stated that at 3:00 a.m. on April 28, 2006, he left a gas station on Southfield and Joy Road.  A small grey Honda pulled in front of his car, and he heard someone say this is the police.  Three armed males got out of the SUV and approached.  Feazell stated that Defendant struck him in the head with a gun, and that his car was driven away.  Feazell ran away, but said he saw the Honda SUV again, and that he saw three men outside the SUV pointing guns at the driver of a green car with an out of state license plate.  Feazell stated the three got back in the Honda, and the Honda drove past him.  Feazell was not able to identify anyone at a police lineup.   Feazell stated that his cell phone and a gold chain were taken.   T2, 71 - 108.

Dewayne Smith stated that on April 28, 2006, he was driving a green Honda car with an out of state license plate on Archdale Street.  As Smith pulled into his driveway, three men exited a minivan with handguns, announced they were the police, and told Smith to turn around.  Smith's stated that a short man hit him in the head with a gun, and stated that his wallet and money were taken.   Smith said that Defendant was the size of the short man, but he could not identify anyone in the courtroom. T2, 110 - 124.

Marie Leinonen testified that on April 28, 2006, she was alone when a SUV

4

pulled in front of her car and blocked her. Four men got out of the car carrying guns and yelling police. Leinonen stated she know the men were not police, and she tried to back away. The men banged on her car, and she opened the door. One man hit her on the head, and took her purse from the car. Leinonen stated that Defendant was about the size of the person who hit her on the head. Leinonen stated she drove away, shots were fired, and she called the police. Leinonen was not able to identify any of the men at any of the several lineups she attended. T2, 125 - 143.

Myra Andrews testified she was in a Buick with Roland Welborn on April 28, 2006. A grey Honda occupied by four black males cut off her Buick. A man with braids and a gun exited the Honda, and approached. Andrews put her car in reverse and backed up a driveway. Welborn got out of the Buick and ran away. Andrews drove away and saw a vehicle crashed into a pole at Joy and Southfield, with a person lying in the street. Andrews was unable to identify anyone. T3, 16 - 26.

Roland Welborn stated that he was with Andrews when they were cut off by a grey SUV. A man jumped out of the SUV with a gun. When Andrews backed up into a driveway, Welborn jumped out and ran away between houses. He was unable to identify anyone. T3, 27 - 32.

Several police department forensic witnesses testified.

An autopsy of Charles Phipps was conducted by Boguslaw Pietak. His report was admitted by stipulation. The cause of death was multiple gunshot

5

wounds.  The manner of death was homicide.  T3, **112.**

According to Detroit Police Investigator Barbara Simon, Defendant met with an attorney.  After the attorney left, Defendant agreed to make a statement. According to the statement, Defendant received a ride from Gray, who was driving McConnell's aunt's car.  Curry and McConnell were passengers. Defendant had a pistol, the other three men were also armed.  While driving on Southfield, Gray became upset because another car was following too closely. Gray stopped the vehicle, got out and shot at the other car.  Gray got back in the car and drove away.  Later, on Rutland, Gray got out of the vehicle and began shooting at a minivan.  The van driver began reaching for something.  Defendant and the others began to shoot as well.  The van driver fell, and the men went to Defendant's sister-in-law's house.  T3, 113 - 133.

Defendant testified in his own behalf.  He stated that on April 28, 2006, he paid McConnell to follow him to an auto repair shop to drop off his mother's van. McConnell also drove Defendant to pick up his van.   Defendant stated that he spent the night at  his sister-in-law's house on Rutland, and did not participate in any robbery or any of the crimes charged against him.  Defendant stated that he was contacted by the police and he was questioned by the police.  Defendant stated that he was threatened and physically abused by the police.  Defendant further stated he was prevented from speaking to the attorney his mother sent to the police station until after the statement was reduced to writing.  Defendant denied making the statement and denied any involvement in any of the crimes

6

charged against him.  Defendant admitted signing the statement, but said he did so only because he was told that if he signed the statement, he would be released.  T3, 165.

The defense rested.  T3, 211.  The assault with intent to rob charges involving complainants Andrews and Welborn were dismissed.  T4, 2 - 3.  The jury convicted Defendant of the remaining charges.  T5, 3 - 8.

Defendant was sentenced to concurrent terms of life imprisonment for the murder convictions; concurrent sentences of 285 months to 600 months for assault with intent to rob, Carjacking, armed robbery, and assault with intent to murder; 2 years to 5 years for felon in possession of a firearm, and 2 years consecutive for felony firearm.  S, 12 - 13.

Defendant appealed by right his convictions and sentences to the Michigan Court of Appeals.  The Court of Appeals affirmed, but remanded for correction of the Judgment of Sentence. [4]

An application for leave to appeal was filed in the Michigan Supreme Court, but was denied by the Michigan Supreme Court on January 27, 2009. [5]

ARGUMENT

---

[4] People v Treadwell, Court of Appeals Docket No. 277363, unpublished per curiam, released July 15, 2008.

[5] People v Treadwell, Supreme Court Docket No. 137126

7

ISSUE I       DEFENDANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE
              ASSISTANCE OF COUNSEL  BECAUSE HIS ATTORNEY FAILED TO
              INVESTIGATE AND PREPARE FOR TRIAL

Because an attorney's representation of a client is presumed to be

adequate, a Defendant attacking the adequacy of counsel's representation

generally has the burden of proof.  In Michigan, where the claim of

ineffectiveness depends on facts not of record, Defendant must make a

testimonial record in the trial court.  *People v Ginther*, 390 Mich 436; 212 NW 2d

922 (1973).

In this case, Defendant asserts that he did not receive effective assistance

of counsel from his trial counsel.

The issue of ineffectiveness of counsel has to be established either by on

record evidence or by a separate evidentiary hearing, as envisioned by *People v*

*Ginther, supra.*

The seminal case dealing with ineffective assistance of counsel is

*Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674  (1984).  In

that case, the standard was established that to prevail on an ineffective

assistance of counsel claim a Defendant must establish that (1) counsel's

representation fell below an objective standard of reasonableness and (2) there is

a reasonable probability that but for counsel's unprofessional errors, the result of

the proceeding would have been different.  *Strickland, supra*, at 694.

Under *Strickland*, a court must ensure that counsel's actions provided the

Defendant with the modicum of representation that is his constitutional right in a criminal prosecution.

Under *Strickland*, the Defendant must show that the performance so prejudiced him that he was deprived of a fair trial. *Pickens, supra*, at 694. To establish prejudice, a Defendant must show a reasonable probability that the outcome would have been different by for counsel's errors, but that does not mean that Defendant must show that it is more likely than not the outcome would have been different. *Id* at 693. As stated in *Pickens*, "the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id* at 694.

These cases predated the Supreme Court's 1984 decision in <u>United States v. Cronic</u>, supra. The <u>Cronic</u> opinion included a strong statement that no prejudice need be shown where counsel was absent at a critical stage of a criminal proceeding.

Cronic was an appeal from a federal conviction for mail fraud. The defendant's lawyer was essentially new to criminal proceedings, and he had less than a month to prepare for the trial, while the government enjoyed four and a half years to investigate and had examined thousands of pages of documentation in preparation for the case. The Tenth Circuit reversed the conviction, finding it unnecessary to examine the lawyer's performance on the grounds that ineffectiveness could be inferred from a combination of, inter alia, his

9

inexperience, the complexity of the case, and the short time he had to get ready.

The Supreme Court reversed and held that the Tenth Circuit should have analyzed the lawyer's actual conduct, and not merely inferred ineffective assistance of counsel. The Court wrote that claims of ineffective assistance of counsel typically ought to be made "by pointing to specific errors made by trial counsel." Cronic, 466 U.S. at 666, 104 S.Ct. 2039 (footnote omitted). In fact, the Court wrote that, should any such claims of specific error be made on remand in the case, they should be "evaluated under the standards enunciated in Strickland v. Washington." Id. at 667 n. 41, 104 S.Ct. 2039. (citation omitted).

The only exception to the rule of specificity obtained where "surrounding circumstances justify a presumption of ineffectiveness." Id. at 662, 104 S.Ct. 2039. In those cases, a "Sixth Amendment claim [would] be sufficient without inquiry into counsel's actual performance." Ibid. (footnote omitted). These circumstances would be of atypical "magnitude" such that "they are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id. at 658-59, 104 S.Ct. 2039.

Justice Stevens listed these circumstances as:

1.    Where there is a complete denial of counsel.

2.    Where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.

The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the

10

accused during a critical stage of the proceeding.[6]

Finally, in Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court considered the case of a New Jersey convict petitioning for a writ of habeas corpus on the ground that certain incriminating evidence had been obtained in violation of his Fourth Amendment protections. The defendant's claims were also wrapped into an ineffective assistance of counsel argument. Citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052, the Supreme Court noted that "[i]n order to establish ineffective representation, the defendant must prove both incompetence and prejudice." Kimmelman, 477 U.S. at 381, 106 S.Ct. 2574. The Court then added a footnote, citing Cronic and other cases, explaining: "[w]e refer here only to cases in which the defendant alleges `actual' ineffective assistance rather than the few contexts where ineffective assistance is `presumed,' such as where counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceeding...." Id. at 381 n. 6, 106 S.Ct. 2574.

In this case, defense counsel was not acting as an effective counsel protecting Defendant's interests. He failed to identify an exculpatory witness on

---

[6]  See, e.g., Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); Brooks v. Tennessee, 406 U.S. 605, 612-613, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (per curiam); Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); Williams v. Kaiser, 323 U.S. 471, 475-476, 65 S.Ct. 363, 366, 89 L.Ed. 398 (1945).

his witness list.  Then when the defense counsel belatedly tried to call the witness, he was prevented from calling the witness.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel for his defense at all critical stages of the proceedings against him. The Court in United States v. Wade, 388 U.S. 218, 224-226, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967) recently commented on this right:

> "The Framers of the Bill of Rights envisaged a broader role for counsel than under the practice then prevailing in England of merely advising his client in "matters of law," and eschewing any responsibility for "matters of fact." The constitutions in at least 11 of the 13 States expressly or impliedly abolished this distinction. Powell v. Alabama, 287 U. S. 45, 287 U. S. 60-65; Note, 73 Yale L.J. 1000, 1030-1033 (1964).

> "Though the colonial provisions about counsel were in accord on few things, they agreed on the necessity of abolishing the facts-law distinction; the colonists appreciated that, if a defendant were forced to stand alone against the state, his case was foredoomed."

> 73 Yale L.J., supra, at 1033-1034.
> This background is reflected in the scope given by our decisions to the Sixth Amendment's guarantee to an accused of the assistance of counsel for his defense. When the Bill of Rights was adopted, there were no organized police forces as we know them today.  The accused confronted the prosecutor and the witnesses against him, and the evidence was marshaled, largely at the trial itself. In contrast, today's law enforcement machinery involves critical

12

confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality. In recognition of these realities of modern criminal prosecution, our cases have construed the Sixth Amendment guarantee to apply to "critical" stages of the proceedings. The guarantee reads:

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful "defence." As early as Powell v. Alabama, supra, we recognized that the period from arraignment to trial was "perhaps the most critical period of the proceedings . . . ," id. at 287 U. S. 57, during which the accused "requires the guiding hand of counsel . . . ," id. at 287 U. S. 69, if the guarantee is not to prove an empty right. That principle has since been applied to require the assistance of counsel at the type of arraignment -- for example, that provided by Alabama -- where certain rights might be sacrificed or lost: "What happens there may affect the whole trial. Available defenses may be irretrievably lost, if not then and there asserted. . . ." Hamilton v. Alabama, 368 U. S. 52, 368 U. S. 54. See White v. Maryland, 373 U. S. 59. The principle was also applied in Massiah v. United States, 377 U. S. 201, where we held that incriminating statements of the defendant should have been excluded from evidence when it appeared that they were overheard by federal agents who, without notice to the defendant's lawyer, arranged a meeting between the defendant and an accomplice turned informant. We said, quoting a concurring opinion in Spano v. New York, 360 U. S. 315, 360 U. S. 326, that

"anything less . . . might deny a defendant 'effective

13

represenation by counsel at the only stage when legal aid and advice would help him.'"

ISSUE II     DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO CALL AN EXCULPATORY DEFENSE WITNESS.

There was a fundamental error by defense counsel. A potential witness Royce Ali, was identified as the shooter by a victim. Royce Ali had gunshot residue on his hands. Yet inexplicably, the defense attorney failed to list the witness and thus was prevented from calling the exculpatory witness on Defendants behalf.

There can be no argument that this was "trial strategy". There is no possible trial strategy in failing to call such a witness.

Based upon this error alone, defense counsel's representation fell below an objective standard of reasonableness. Additionally, there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland, supra*, *Pickens, supra.*

Defendant is entitled to a new trial based on ineffective assistance of counsel. Defense Counsel's failure to present the exculpatory witness should be seen as a failure to subject the prosecution's case to meaningful challenge. *Cronic, supra.*

14

III   DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE HIS ATTORNEY FAILED TO SEEK AN EXPERT WITNESS TO TESTIFY AS TO FALSE IDENTIFICATION AND FALSE CONFESSIONS.

Defendant was deprived of his right to a fair trial because his defense attorney failed to seek an expert witness to testify as to the false identification of Defendant by the various witnesses at trial.   Also, Defendant was denied his right to a fair trial because his defense attorney failed to seek an expert witness to testify as to false confessions.

A defendant is entitled to appointment of an expert if he cannot safely proceed to trial without an expert. *People v Leonard,* 224 Mich App 569 (1977). A defendant must show a nexus between the expert and the facts of the case. People v Jacobson, 448 Mich 669 (1995).

Defense counsel never sought the appointment of an identification expert to explain to the jury the reasons for the false identifications of Defendant.  Also, defense counsel never sought the appointment of an expert to testify to false confessions.

Identification issues are fraught with danger.   In *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), the United States Supreme Court in a "post-indictment" case held that, because of the established dangers of irreparable misidentification coupled with the inability to accurately reconstruct what happens at corporeal lineups, an accused in a Federal prosecution is entitled to counsel at a pretrial lineup in order to protect his right to meaningfully cross-examine the identifying witness at trial. Unless and until

15

there is appropriate leg[...]tion or executive action, where a lineup is held without counsel, any subseque[...] in-court identification must be preceded by an evidentiary hearing ou[...] the presence of the jury at which the prosecution must show by clear and con[...]ing evidence that the in-court identification has a basis independent of the illeg[...] lineup.

In *People v And[...]on*, our supreme court analyzed the Wade case, and developed three rules [...] [l]ealing with identification issues.

> 1. Defend[...] is entitled to counsel at pretrial identification procedur[...]
> 2. Unnece[...]arily suggestive and conducive to irreparable misidenti[...]on procedures deny due process
> 3. If there [...] no counsel at the pretrial identification or if the procedure [...]re unnecessarily suggestive or conducive to irreparabl[...]sidentification, then before an in-court identification may be re[...]ed in evidence, the trial court must hold an evidentiary hearing ou[...] of the presence of the jury at which the people must show by c[...] and convincing evidence that the in-court identifica[...] [l]ad a basis independent of the prior identification procedur[...] [Pe]ople v Anderson, 389 Mich 155; 205 NW2d 461 (1973)

In this case, De[...]ant was identified at trial by witnesses who did not make pretrial identific[...]ns at lineups. Defendant should have had an identification expert t[...] [...]ain to the jury the reason why people make false identifications. Defen[...] [c]ounsel's failure to request a defense expert to challenge the false id[...]fications deprived Defendant of a fair trial.

Likewise, Defe[...]t testified at both the Walker hearing and the trial that he had given a false c[...]ssion. Such false confessions are well known in our criminal justice syste[...] However, the jury was not presented with an expert

witness to testify to th ..equency of false confessions at **trial.**

**RELIEF REQUESTED**

**WHEREFORE,** [ ..ENDANT Jason Treadwell, **respectfully requests this**

Honorable **Court to** gr.... extraordinary **post-judgment relief pursuant to MCR**

**6.500, grant a** <u>Ginther</u> ..ring, **and ultimately, grant Defendant a new trial.**

Respectfully **submitted,**

Respectfully submitted,

Lawrence J. Bunting (P27111)
3190 Rochester **Road, Suite 100**
Troy, MI 48084
(248) 689-4200

17

# ATTACHMENT  F
Trial Court Order and Opinion Denying Relief
Issued October 12, 2010

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

-v-

JASON TREADWELL,

    Defendant.

Case No.    06-008315-01

Hon.   Bruce U. Morrow

## O R D E R

At a session of said Court held in the Frank Murphy Hall of Justice, Detroit, Wayne County, Michigan, on this:

**OCT 1 2 2010**

PRESENT:    **HON. BRUCE U. MORROW**
            Circuit Judge

The Court being advised in the premises and for the reasons stated in the foregoing Opinion,

**IT IS ORDERED** that defendant's motion for relief from judgment is DENIED.

Circuit Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY_____ DEPUTY CLERK

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

-v-

                                    Case No.    06-008315-01

JASON TREADWELL,

                                    Hon.  Bruce U. Morrow

    Defendant.

## OPINION

This criminal matter is before the Court on a motion for relief from judgment filed by defendant Jason Treadwell, acting in *propria persona*. For the reasons stated below, the Court will deny the motion.

### 1.  Procedural History

Following a jury trial, defendant was convicted on February 5, 2007 of first-degree premeditated murder, MCL 750.316, felony murder, MCL 750.316, assault with intent to rob while armed, MCL 750.89, carjacking, MCL 750.529a, two counts of armed robbery, MCL 750.529, assault with intent to murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and felony-firearm, MCL 750.227b. The convictions arose from an early morning crime spree on April 28, 2006. He was sentenced to life imprisonment without parole for each murder conviction, 285 months to 50 years' imprisonment for each assault with intent to rob while armed, carjacking, armed robbery, and assault with intent to commit murder conviction, two to five years' imprisonment for the felon in possession conviction, and two years'

imprisonment for the felony-firearm conviction. Defendant appealed as of right and the Court of Appeals affirmed, but remanded for a correction of the judgment of sentence to reflect one conviction and one sentence for first-degree murder supported by two theories and a vacation of the assault with intent to rob while armed conviction. *People v Treadwell*, unpublished opinion per curiam of the Court of Appeals, decided July 15, 2008 (Docket No. 277363), 2008 Mich App Lexis 1465. The instant motion for relief from judgment followed.

## 2. Standards for Determining Motions for Relief From Judgment

MCR 6.508(D) limits a defendant's entitlement to relief from judgment. If the defendant raises grounds for relief other than jurisdictional defects, relief may not be granted unless the defendant demonstrates both good cause for failure to raise the grounds for relief on appeal or in a prior motion and actual prejudice from the alleged irregularities that support the claim for relief. MCR 6.508(D)(3)(a) and (b). In order to demonstrate actual prejudice when challenging a conviction following a trial, a defendant must show that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MCR 6.508(D)(3)(b)(i).

## 3. Analysis

Defendant argues that he was denied the effective assistance of trial counsel.

Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). When reviewing a claim of ineffective assistance of counsel, a court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "To establish a claim of ineffective assistance of counsel, a defendant must show both that

counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). To demonstrate that counsel's performance was deficient, a defendant must show that counsel's representation "fell below an objective standard of reasonableness . . . . In so doing, the defendant must overcome a strong presumption that counsel's performance constituted strong trial strategy." *Id* at 140. To establish that his counsel's deficient performance prejudiced the defense, the defendant must establish that his counsel's representation was so prejudicial that he was denied a fair trial. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). This means defendant "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Id* at 302-303, quoting *People v Mitchell*, 454 Mich 145, 167; 560 NW2d 600 (1997).

Defendant first argues that counsel was ineffective for failing to "investigate." However, defendant fails to explain what further investigation he believes trial counsel should have undertaken, or what information counsel may have discovered during an investigation that would have led to a reasonable probability that he would not have been convicted. A defendant may not merely announce his position and leave it to the court to discern and rationalize the grounds for his claims. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Accordingly, defendant is not entitled to relief from judgment on this issue.

Defendant next argues that counsel was ineffective for failing to call an exculpatory witness. According to defendant, this potential witness, Royce Ali, was identified as a shooter by one of the victims and had gunshot residue on his hands.

Decisions regarding what evidence to present and whether to call or questions witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Counsel's failure to call a witness is considered ineffective assistance only if the failure deprives the defendant of a substantial defense. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Defendant fails to explain what testimony Mr. Ali would have given which would have led to a reasonably likely chance of acquittal. Although defendant claims that a victim identified Mr. Ali as a shooter, it is highly doubtful that Mr. Ali would have admitted to participating in the crimes if called by defense counsel. Further, even if Mr. Ali was one of the shooters, it does not follow that defendant did not participate in the crimes. Defendant was convicted under an aiding and abetting theory, and defendant admitted that he and three other men had guns on the night of the shooting, participated in robberies and attempted robberies within an hour and a few blocks away from were one of the victims was found dead. Also, defendant told Investigator Barbara Simon that he shot at  the victim who was later found dead. Considering the evidence against defendant, including his own inculpatory statements, defendant has failed to show that but for counsel's failure to call Mr. Ali as a witness he would have had a reasonably likely chance of acquittal. Accordingly, defendant is not entitled to relief from judgment based on this issue.

Finally, defendant argues that counsel was ineffective for failing to call an expert witness to testify as to false identification and false confessions. With regard to the expert on false identification, defendant argues that one was required because the victims could not identify defendant in a lineup but later identified him at trial. As to an expert on false confessions, defendant argues that one was required because he testified at a *Walker* hearing and at trial that

he had given a false confession.

Defendant has provided no proof that an expert witness would have testified favorably for him on either issue, and has therefore failed to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Further, whether to present expert testimony is a matter of trial strategy and this Court defers to counsel's strategic decisions. *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Because defendant has failed to establish that the testimony of an expert witness would have led to a reasonably likely chance of acquittal, he is not entitled to relief from judgment on this issue.

For the foregoing reasons, defendant's motion for relief from judgment is denied.

12 OCT 10
**DATED:**

Circuit Court Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
BY_____ DEPUTY CLERK

Παγε 5

ATTACHMENT  G

*People v. Treadwell*, Order of the
Michigan Court of Appeals, issued May 2, 2012
(Docket No. 306377)

## Court of Appeals, State of Michigan

## ORDER

Michael J. Talbot
Presiding Judge

People of MI v Jason Owens Treadwell

Docket No.   306377

E. Thomas Fitzgerald

LC No.   06-008315-01

William C. Whitbeck
Judges

The Court orders that the delayed application for leave to appeal is DENIED for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).

Presiding Judge



A true copy entered and certified by Larry S. Royster, Chief Clerk, on

MAY - 2 2012

Date

Chief Clerk

ATTACHMENT  H
*People v. Treadwell*, Order of the
Michigan Supreme Court, issued October 22, 2012
(Docket No. 145246)

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

October 22, 2012

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

145246

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

                              SC: 145246
                              COA: 306377

JASON OWENS TREADWELL,
      Defendant-Appellant.

                              Wayne CC:  06-008315-01

_____/

On order of the Court, the application for leave to appeal the May 2, 2012 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 22, 2012

                                                 Clerk

s1015

Thumb Correctional Facility
3225 John Conley Drive
Lapeer, Michigan 48446

U.S. MARSHAL

RECEIVED
DEC 05 2012
CLERK'S OFFICE
DETROIT

Clerk of The Court
United States District Court
Eastern District of Michigan
231 W. Safayette Blud.
Detroit, Michigan 48226

31

Priority Mail
ComBasPrice

$ 05.24°
MAILED FROM ZIP CODE 48446